**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WINSTON C. PETERSON** | : | **Civil Action No.** |
| | : | **7:07-CR-34-HL** |
| **Defendant.** | : | |
| | : | |

# <u>ORDER</u>

Before the Court are Defendant's Motion to Suppress (Doc. 16), Motion to Dismiss Count I (Doc. 18), Motion to Dismiss Count II (Doc. 19), Motion to Dismiss Count Four (Doc. 20), Motion to Dismiss Count V (Doc. 21), and Motion for Election or Separate Trial of Counts (Doc. 17). For the following reasons, Defendant's Motion to Suppress and Motion to Dismiss Count II are denied. Defendant's Motion to Dismiss Count I, Motion to Dismiss Count IV, and Motion to Dismiss Count V are granted. Last, Defendant's Motion for Election or Separate Trial of Counts is denied as moot.

## I.     FACTS

Defendant Winston Peterson is the Sheriff of Clinch County, Georgia. He is charged in a five count Indictment with extortion by a public official in violation of 18 U.S.C. § 1951 (Count I), obstruction of justice in violation of 18 U.S.C. § 1503 (Count II), perjury in

1

violation of 18 U.S.C. § 1623 (Count III), forced labor in violation of 18 U.S.C. § 1589 (Count IV), and obstruction of justice in violation of 18 U.S.C. § 1512(c)(2) (Count V).

Count I charges that Defendant committed extortion in violation of the Hobbs Act when he charged inmates for their room and board at the Clinch County Jail. Count IV charges Defendant with using the forced labor of an inmate named Ethan Strickland. Count V charges Defendant with obstruction of justice for tipping off CC #1 as to the identity of a confidential informant against CC #1. Counts II and III charge Defendant with lying to the grand jury when asked whether he did in fact disclose to CC #1 the identity of a confidential informant. Defendant has filed Motions to Dismiss Counts I, II, IV, and V. He has also filed a Motion to Suppress and a Motion for Election or Separate Trial of Counts.

## II. DISCUSSION

### 1. Motion to Suppress

Defendant seeks the suppression of his grand jury testimony on two grounds. First, he contends that United States v. Jacobs, 547 F.2d 772 (2d Cir. 1976), grants this Court the authority to suppress his grand jury testimony based on the Government's "unfair" actions. Second, Defendant contends that the perjury trap doctrine requires suppression of his testimony.

Defendant contends that the Government acted unfairly by not informing him of his 5th Amendment rights prior to testifying and by failing to inform him that he was a target of the investigation. Defendant concedes that he is not asserting that the Government's failure to read him his rights violated the Fifth Amendment; he simply contends that under the

2

circumstances it was unfair that he was not read his rights.  Also, Defendant argues that his testimony should be suppressed because the Government's actions in this case did not conform with the policies contained in the U.S. Attorney's Manual ("USAM") that govern grand jury proceedings.  Specifically, the USAM provides that it is the Department of Justice's ("DOJ") policy to inform grand jury witnesses of their status as "targets" of a grand jury investigation.  USAM § 9-11.151.  "A 'target' is a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant."  Id.  A subject, on the other hand, is "a person whose conduct is within the scope of the grand jury's investigation."  Id. The Government told Defendant that he was a subject, not a target.  Though the Defendant does admit that the USAM does not confer any individual rights, he still contends that this Court should suppress his grand jury testimony under the Second Circuit's decision in Jacobs.

In Jacobs the defendant appeared before the grand jury pursuant to a subpoena issued by the Organized Crime Strike Force.  Jacobs, 547 F.2d at 773-74.  The Strike Force consisted of special attorneys that were appointed by the Attorney General of the United States.  Id. at 774.  At the time she testified, the Strike Force had in its possession a tape of a recorded telephone call between the defendant and another individual.  Id. at 775.  The telephone call was the subject of the grand jury's inquiry.  Even though it had the telephone conversation on tape, the Strike Force attorneys still proceeded to ask the defendant about the contents of the call, and the defendant's false testimony about the call served as the basis

for a perjury charge.  See id.  The Second Circuit decided to exercise its supervisory powers and order suppression for two reasons.  First, the Strike Force attorneys did not inform the defendant that she was a target of the grand jury investigation.  Id. at 774.  Because it was a long-standing practice of the United States Attorneys within the district where the grand jury proceeding was conducted to inform grand jury witnesses of their target status, the court decided "to impose a one-time sanction to encourage uniformity of practice...between the Strike Force and the United States Attorney in the same district."  Id. at 773.  Second, the Government did not need the defendant to testify before the grand jury because it already possessed evidence that established the defendant's guilt on the substantive count–i.e., the recorded telephone calls.  Id. at 775.  As a result, the court determined that the Government used the defendant's appearance before the grand jury as a strategic ploy to secure a perjury conviction.  Id.

In this case, Defendant requests that this Court use its supervisory power to suppress his grand jury testimony because the facts of this case are similar to the facts in Jacobs in that (1) the Government failed to inform him that he had a right not to incriminate himself, (2) contrary to the USAM, he was not informed that he was a target of the grand jury's investigation, and (3) the Government already possessed evidence that Defendant committed the substantive offense of obstruction of justice charged in Count V, and therefore, it did not need to ask Defendant the questions that led to the perjury charge in Count III.  The evidence the Government allegedly possessed was a tape recorded conversation of a phone call between CC #1 and Defendant in which CC #1 allegedly thanks Defendant for disclosing to

him the identity of the confidential informant. During his grand jury testimony, the Government asked Defendant whether CC #1 called to thank Defendant for tipping him off, and Defendant denied that he had. Thus, Count III charges that Defendant committed perjury when he testified in response to this question.

Under the Second Circuit's decision in Jacobs, this Court must first determine whether it has the authority to order suppression. After the Second Circuit decided Jacobs, the Supreme Court in United States v. Williams, 504 U.S. 36 (1992), limited the scope of the supervisory authority that courts have over the grand jury process. In Williams the Supreme Court held that a district court's supervisory powers are severely limited because the grand jury is a body that is separate from the courts. Id. at 46-47. Thus, the Supreme Court concluded that "as a general matter at least, no such 'supervisory' judicial authority [over the grand jury process] exists." Id. at 47.

Several years after Williams, the Sixth Circuit decided United States v. Meyers, 123 F.3d 350 (6th Cir. 1997). In Meyers the Sixth Circuit determined that the Government violated internal DOJ policy by failing to inform the defendant that he was a target of the grand jury's investigation. Id. at 355. As in this case, the defendant relied on Jacobs in his motion to suppress. Id. at 356. The court, applying Williams, noted that its supervisory powers over the grand jury process were limited to exceptional circumstances. Id. The court concluded that the defendant had made no showing that the Government acted in bad faith or that any other exceptional circumstances existed, even though the Government had technically violated an internal DOJ policy. Id. In the absence of any exceptional

circumstances, the Sixth Circuit held that it did not have the authority to order suppression as a remedy. Id. at 358.

Here, this Court does not have the authority to order suppression because Defendant has not demonstrated that the Government acted in bad faith or that any other exceptional circumstances are present. Most importantly, Defendant has not even demonstrated that the Government violated DOJ policy. Though it was obvious in Jacobs that the defendant was the actual target of the grand jury's inquiry, Defendant has not pointed to any evidence in this case that would lead this Court to conclude that the Government misled Defendant about his status. The fact that the Government had a tape recorded conversation before it asked Defendant about its contents does not lead this Court to conclude that the Government acted in bad faith. The contents of the tape were relevant to the grand jury's inquiry and the Government had a right to pursue an investigation into what exactly was meant by the things that CC #1 said on the tape. Last, the fact that the Government did not read Defendant his Fifth Amendment rights prior to testifying does not lead this Court to conclude that the Government acted unfairly. Defendant was a sworn witness before the grand jury and the Government informed him that he would subject himself to a charge of perjury if he did not tell the truth. Accordingly, this Court concludes that there are no exceptional circumstances in this case that give it the authority to order suppression as a remedy.

Defendant next asserts that his testimony should be suppressed pursuant to the perjury trap doctrine. A perjury trap exists "when the government calls a witness before the grand jury for the primary purpose of obtaining testimony from him in order to prosecute him later

for perjury." United States v. Chen, 933 F.2d 793, 796 (9th Cir. 1991). "It involves the government's use of its investigatory powers to secure a perjury indictment on matters which are neither material nor germane to a legitimate ongoing investigation of the grand jury." Id.

Here, Defendant asserts that perjury trap doctrine requires that his testimony be suppressed because the Government already had a tape recording of the conversation between Defendant and CC #1 in which CC #1 allegedly thanked Defendant for tipping him off about the informant's identity. As stated above, it was not improper for the Government to question Defendant about the contents of the telephone call. The grand jury was conducting an investigation into CC #1, and evidence that CC #1 may have been tipped off about the identity of an informant was relevant and material to the investigation. As a result, the perjury trap doctrine cannot be used to suppress the grand jury testimony in this case. Defendant's Motion to Suppress is denied.

## 2. Motion to Dismiss Count I

Count I charges Defendant with violating 18 U.S.C. § 1951 when he committed the offense of extortion by charging inmates at the Clinch County Jail for room and board. Count I alleges that Defendant forced inmates to pay for their room and board before their release on bond. If they were unable to pay for their room and board before their release, Defendant forced them to sign promissory notes that stated they could be re-incarcerated for failure to pay. Defendant collected the room and board fees and then remitted them to the County Commissioners. According to the indictment, there was no legal basis on which Defendant could charge these fees. Defendant seeks to have Count I dismissed because (1)

7

18 U.S.C. § 1951 does not prohibit charging inmates for room and board, (2) Count I is vague, (3) Count I is duplicitous, and (4) Count I fails to set forth a nexus with interstate commerce. In the alternative, he requests a bill of particulars that states: (1) the names of all individuals who are the purported victims of Sheriff Peterson's alleged violation of 18 U.S.C. § 1951, (2) the dates upon which such alleged violations occurred, (3) the amount of money allegedly paid by each of the purported victims, (4) which purported victims signed any promissory notes guaranteeing their payment of the room and board fee, (5) which purported victims, if any, were ever re-incarcerated for failure to pay the fee and when.

An indictment is sufficient if (1) it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of the charge he must defendant against, and (2) it permits the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. Hamling v. United States, 418 U.S. 87, 117 (1974). An indictment is generally sufficient if it charges in the language of the statute. United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004). If an indictment tracks the language of the statute, "'it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). "When the indictment uses generic terms, it must state the offense with particularity." Id.

Pursuant to Federal Rule of Criminal Procedure 12(b), a defendant may file a motion to dismiss an indictment for failure to state an offense. FED. R. CRIM. P. 12(b). In ruling on a motion to dismiss, the district court is limited to reviewing the face of the indictment.

Salman, 378 F.3d at 1268. It is well-established that "'[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence....'" Id. (quoting United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992). Although a district court is not permitted to go beyond the face of the indictment in ruling on a Rule 12(b) motion to dismiss, a court must dismiss an indictment if it fails to allege facts that constitute an offense. See, e.g., United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983). Thus, at this stage this Court must dismiss Count I if it fails to allege a prosecutable offense. See United States v. Cure, 804 F.2d 625, 627 (11th Cir. 1986).

Count I charges that Defendant committed extortion in violation of the Hobbs Act. "An extortion conviction under the Hobbs Act requires proof that (1) the defendant induced his victim to part consensually with property (2) either through the wrongful use of actual or threatened force, violence or fear or under color of official right (3) in such a way as to adversely affect interstate commerce." United States v. Smalley, 754 F.2d 944, 947 (11th Cir. 1985). There are two types of Hobbs Act extortion: (1) extortion by force, which is the "'obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear;'" and (2) extortion under color of official right, which is the "'obtaining of property from another, with his consent, under color of official right.'" United States v. Clark, 773 F. Supp. 1533, 1534 (M.D. Ga. 1991) (quoting United States v. Williams, 621 F.2d 123, 124 (5th Cir. 1980)).[1] In order to establish extortion under color

---

[1]The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981). This body of precedent is

of official right, the Government does not need to show the element of actual or threatened force, violence, or fear. United States v. Glass, 709 F.2d 669, 674 (11th Cir. 1983). In both types of extortion, the taking of the victim's property must have been "wrongful." See United States v. Enmons, 410 U.S. 396, 399-400 (1973); U.S. v. Pendergraft, 297 F.3d 1198, 1205 (11th Cir. 2002). Wrongful means the extortionist had no lawful or legal claim to the property. Pendergraft, 297 F.3d at 1205.

Here, Defendant contends that he cannot be guilty of a Hobbs Act violation because he lawfully charged the inmates for their room and board, and therefore, he had a lawful or legal claim to the property he obtained. This Court need not resolve this issue, however, because Count I is fatally defective for a different reason. Defendant cannot be guilty of extortion by a public official in violation of the Hobbs Act because, as the indictment states, he collected the funds and "remitted them to the County Commissioners." A public official who obtains property on behalf of the government does not commit the offense of extortion, even if the government does not have a lawful or legal claim to the property. See Wilkie v. Robbins, 127 S. Ct. 2588 (2007).

In Robbins a private property owner brought a civil suit against the Bureau of Land Management ("BLM") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The plaintiff, who owned a guest ranch in Wyoming, asserted that BLM employees violated the Hobbs Act when they used extortion in an attempt to force him to grant an easement to BLM. Id. at 2596-97. The alleged Hobbs Act violation served as the

---

binding unless and until overruled by the Eleventh Circuit en banc. Id.

predicate offense for the plaintiff's civil RICO suit.  Id. at 2605.  On appeal from the district court's denial of its motion for summary judgment, the BLM asserted that it was entitled to summary judgment because it had a valid legal claim to the disputed easement.  Id. at 2597. The Tenth Circuit rejected this defense and affirmed the district court, concluding that a government official commits the offense of extortion if he obtains property that "he has lawful authority to obtain, but does so in a wrongful manner."  Id. (internal quotations omitted).  Subsequently, the BLM filed a petition for writ of certorari, which the Supreme Court granted.  Id.

The BLM argued that the Supreme Court should reverse the Tenth Circuit's decision to allow the plaintiff's RICO claim to proceed because, inter alia, the Hobbs Act does not apply when the federal government is the indented beneficiary of the alleged extortionate acts.  Id. at 2605.  The Supreme Court agreed and held that the Hobbs Act is not violated when the alleged extortionist is trying obtain property on behalf of the government rather than a private party.  Id. at 2605-07.  The Court reached its decision by examining the common law definition of extortion, which it looked to because the language of the Hobbs Act and its legislative history were of little help in assisting the Court.  Id. at 2605-06.  The Court observed that at common law, extortion by a public official "'was the rough equivalent of what we would now describe as taking a bribe.'"  Id. at 2606 (quoting Evans v. United States, 504 U.S. 255, 259 (1992)).  In other words, "the crime of extortion focused on the harm of public corruption, by the sale of public favors for private gain, not on the harm caused by overzealous efforts to obtain property on behalf of the [g]overnment."  Id.  This

conclusion was confirmed by the Court's own case law, which was completely void of a single case in which it had found extortion by a public official based on the taking of property for the sole benefit of the government. Id. Because expanding the Hobbs Act beyond the common law conception of extortion would potentially expose numerous government employees to civil claims or criminal charges based on their efforts to obtain property on behalf of the government, the Court determined that Congress did not intend for the Hobbs Act to go beyond the common law's "preoccupation with official corruption." Id. at 2607.

In this case, it is clear on the face of the indictment that Defendant obtained the room and board fees on behalf of the local government. Paragraph 5 of Count I charges that "Sheriff Peterson collected these funds and remitted them to the County Commissioners." Under the Supreme Court's decision in Wilkie, Count I does not charge a prosecutable offense because Defendant obtained the property on behalf of the county rather than himself. The issue of whether or not Defendant, as the Sheriff, had the authority to charge inmates for their room and board is irrelevant. The fact that Defendant collected the funds on behalf of the Clinch County government is what takes Defendant's conduct outside the scope of the Hobbs Act. As a result, Defendant's Motion to Dismiss Count I is granted.[2]

---

[2]     This Court has only looked at the face of the indictment in ordering dismissal. This Court is well-aware of the prohibition against considering evidence beyond the indictment in ruling on a Rule 12(b) motion to dismiss, but the fact that Count I charges Defendant with a nonprosecutable offense is apparent by looking at the four-corners of the indictment. See Cure, 804 F.2d at 627 ("The district court was required to dismiss the indictment if it fail[ed] to allege facts that constitute a prosecutable offense."). A government official does not commit the offense of extortion when he collects money on behalf of the government rather than himself.

### 3. Motion to Dismiss Count II

Count II charges Defendant with obstruction of justice in violation of 18 U.S.C. § 1503 during his testimony before the grand jury. Defendant contends that Count II should be dismissed because (1) it does not allege the elements of § 1503, (2) it is vague because it does not state which statements are false, and (3) it is duplicitous. In the alternative, Defendant requests a bill of particulars stating (1) the purpose of the grand jury investigation, (2) which testimony or portions of Defendant's testimony are alleged to be false, and (3) how Defendant's testimony had the effect of obstructing or impeding the administration of justice.

Count II charges all the elements and it is not impermissibly vague. The language the Government has used to charge tracks the language of the statute: "Winston C. Peterson, corruptly endeavored to influence and impede the due administration of justice and any grand juror in the discharge of his/her duty." (Indict. Count II). The Count then recites several pages of testimony. Count II alleges all the elements because it tracks the language of the statute. It also fairly informs the Defendant of what he must defend against because it even quotes the exact testimony that the Government contends was obstructive. The indictment does not need to charge the manner in which his testimony obstructed justice. See United States v. Perkins, 748 F.2d 1519, 1526 (11th Cir. 1984). Accordingly, Count II sufficiently charges all the elements of the offense, and it is not impermissibly vague.

Defendant next contends that Count II is duplicitous because it recites more than four pages of Defendant's grand jury testimony, and therefore, it charges two or more separate

offenses in the same count. A count in an indictment is duplicitous if it charges two or more "separate and distinct" offenses. United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997). Here, Count II is not duplicitous because it charges a single offense—obstruction of justice. The fact that Count II lays out several acts of obstruction does not make it duplicitious. In United States v. Berardi, 675 F.2d 894 (7th Cir. 1982), a single count in the indictment charged three acts of obstruction as constituting a single violation of 18 U.S.C. § 1503. Id. at 898. The Seventh Circuit held that the count was not duplicitous because the charged conduct constituted a single continuing offense. Id. The court reasoned that § 1503 "contemplates a continuing course of conduct, during the pendency of a judicial proceeding, designed to further the single object of influencing intimidating or impeding a witness." Id. The court concluded that the three acts constituted a continuing course of conduct because the "acts occurred within a relatively short period of time, were committed by one defendant, involved a single witness, and were in furtherance of [the defendant's] solitary object of influencing [the witness]." Id.; see also U.S. v. Watt, 911 F. Supp. 538, 551-52 (D.D.C. 1995).

Here, Count II alleges that Defendant committed the single offense of obstruction of justice by giving the testimony he gave before the grand jury. Thus, it charges a single offense that was committed by a continuing course of conduct because the alleged testimony occurred on the same day, was committed by the same defendant, and the testimony recited in Count II deals with the same subject matter—Defendant's alleged disclosure to CC #1 of the identity of a confidential informant. As a result, Count II is not duplicitous.

Last, Defendant requested a bill of particulars. A bill of particulars serves to provide the defendant with information essential to his defense and to minimize the defendant's surprise at trial. United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985). District courts have broad discretion in deciding whether a bill of particulars should be granted. Id. In this case, Defendant has requested a bill of particulars stating the purpose of the grand jury investigation, which testimony or portions of Defendant's testimony are alleged to be false, and how Defendant's testimony had the effect of obstructing or impeding the administration of justice. The Government's Response to Defendant's Motion to Dismiss does contain a bill of particulars that provides some of the information Defendant has requested. The bill of particulars the Government provided is the transcript of the testimony recited in Count II of the indictment. In the transcript, the Government has divided the testimony into three different parts and has identified the testimony alleged to be false. The Government, however, has only identified how one of the three parts of testimony had the effect of obstructing or impeding the administration of justice. The Government has also failed to identify the purpose of the grand jury's investigation. This Court finds that the information the Government has failed to provide is essential to the Defendant's defense. See Perkins, 748 F.2d at 1526 n.11 (observing that a statement of the grand jury's purpose would assist the defense in a prosecution under § 1503); United States v. Barfield, 999 F.2d 1520, 1523 (11th Cir. 1993) (stating that the Government must show an obstruction of justice based on false testimony to sustain a conviction under § 1503). Thus, the Government is ordered to provide to the Defendant within ten (10) days of the entry of this Order an amended bill of

particulars (1) identifying how each part of Defendant's testimony had the effect of obstructing or impeding the administration of justice and (2) stating the grand jury's purpose.

### 4. Motion to Dismiss Count IV

Count IV charges that Defendant violated 18 U.S.C. § 1589(3) when he used the forced labor of an inmate named Ethan Strickland. Under 18 U.S.C. § 1589(3), it is unlawful for an individual to obtain labor from a person by means of the abuse or threatened abuse of law or the legal process. Defendant seeks dismissal because (1) § 1589 does not prohibit the conduct alleged in Count IV, and (2) Count IV is impermissibly vague because it does not allege what kind of abuse of law Defendant committed or threatened to commit. In the alternative, Defendant has moved for a bill of particulars stating (1) what abuse of law or threatened abuse of law, if any, Defendant committed, and (2) when such abuse or threatened abuse of law was allegedly committed.

Defendant first contends that Count IV should be dismissed because 18 U.S.C **§** 1589(3) was not intended to prevent law enforcement personnel from putting inmates to work. In support of this position, Defendant relies mainly on evidence that will likely be presented at trial that will show Defendant did not force inmate Strickland to work against his will. At this stage, however, this Court must determine the sufficiency of the indictment by looking to the four-corners of the indictment. While Defendant's arguments may be appealing to a jury or to this Court upon consideration of a Rule 29 motion, they are not relevant to this Court's consideration of Defendant's Motion to Dismiss Count IV.

Second, Defendant argues that Count II is impermissibly vague because it does not

specify how Defendant abused or threatened to abuse the law or legal process. Though an indictment is typically sufficient if it tracks the language of the statute, the indictment must also sufficiently apprise the defendant of the charge he must defend against. Russell v. United States, 369 U.S. 749, 763 (1962). Thus, an indictment that tracks the language of the statute "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Id. at 765; Bobo, 344 F.3d at 1083. "When the indictment uses generic terms, it must state the offense with particularity." Bobo, 344 F.3d at 1083; see also FED. R. CRIM. P. 7(c) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged...."). In addition to the requirement that a defendant be sufficiently apprised of the offense, an additional reason why an indictment must allege sufficient facts is to ensure that a defendant is prosecuted on the basis of facts presented to the grand jury. Russell, 369 U.S. at 770-71; see also U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury....").

The leading Supreme Court case discussing the factual specificity required of an indictment is Russell v. United States. In Russell the defendants were charged with violating 2 U.S.C. § 192, which makes it a federal offense for a witness before a congressional committee to refuse "to give testimony pertinent to a question under...inquiry." Id. at 755, 770. The indictments parroted the language of the statute, and they set out the times and places of the hearings, as well as the specific questions that the defendants refused to answer.

Id. at 764.  But they did not identify the subject that was under congressional inquiry at the time the witnesses testified.  Id.  As a result, the Supreme Court held that the indictments were insufficient because they did not sufficiently apprise the defendants of what they had to be prepared to meet.  Id.  The Court stated that when a statute uses generic terms, it is not sufficient for an indictment charging a violation of that statute to simply use the same generic terms; the indictment must do more–"it must descend to particulars."  Id.  The Court concluded that because the subject under inquiry is the "very core of criminality" under 2 U.S.C. § 192, the indictments had to do more than simply repeat the language of the statute. Id.

In dismissing the indictments, the Supreme Court also rejected the Government's offer to cure the deficiencies with a bill of particulars, stating that "it is a settled rule that a bill of particulars cannot save an invalid indictment."  Id. at 769-70.  In order for a grand jury to have made the ultimate decision to indict an individual under § 192, it had to determine the subject under inquiry.  Id. at 770.  Thus, allowing the prosecutor, or even the court, to make a guess as to what the grand jury had in their minds when they indicted the defendants "would deprive the defendant[s] of a basic protection which the guaranty of the intervention of a grand jury was designed to secure...[because] a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."  Id.

The Eleventh Circuit recently had the occasion to address the requirements of Russell in the case of United States v. Bobo.  In Bobo the defendant, a doctor, was indicted and

convicted of healthcare fraud. The Eleventh Circuit held that the defendant's indictment was factually insufficient for two reasons. First, the indictment failed to specify of what the defendant was trying to defraud the health care benefit program. Id. at 1084. Second, it failed to specify the scheme or artifice to defraud with which defendant was charged. Id. Due to the inadequacies of the indictment, the Eleventh Circuit was unable to determine what scheme the jury had found that the defendant committed. Id. at 1085-86. As a result, the court held that the indictment was deficient as a matter of law. Id. at 1086.

Here, the indictment charges that between October 15, 2005, and continuing until on or about May 18, 2006, Defendant obtained the labor of inmate Strickland "by means of the abuse or threatened abuse of law or the legal process, to wit: the defendant did obtain the labor of inmate Strickland at a private business owned by the wife of Defendant Peterson." (Indict. Count IV). The statute's "core of criminality" is the abuse or threatened abuse of the law or legal process to obtain the labor of an individual, but the indictment does not specify what acts Defendant committed that constitute a violation of the statute. As the Supreme Court and the Eleventh Circuit have recognized, when an indictment uses the generic terms of a statute to charge a defendant, the indictment must state the offense with particularity. The terms "abuse or threatened abuse of the law or legal process" are generic terms that are not defined in the statute. The Restatement (Second) of Torts defines the abuse of legal process as the use of a legal process, either criminal or civil, "against another primarily to accomplish a purpose for which it is not designed....." RESTATEMENT (SECOND) OF TORTS § 682. This broad definition demonstrates that the simply using the generic terms to charge

the offense does not sufficiently apprise Defendant of what he must be prepared to meet. As with the fraud offenses involved in Bobo, there are numerous ways in which an individual can abuse the law or legal process. Thus, Defendant and this Court are left to wonder what the jury had in their mind when they indicted Defendant. Did the grand jury find that Defendant abused legal process by simply using an inmate to work on a private business allegedly owned by his wife? If so, merely putting an inmate to work is not in and of itself an abuse of legal process, and if that was the basis for the charge this Court would have to dismiss for failure to state a prosecutable offense. Or, on the other hand, did the grand jury find that Defendant committed some other act that violated the statute, such as threatening inmate Strickland with a longer jail term? Because Count IV is so vague and the meaning of the statutory terms are so broad, it does not sufficiently apprise Defendant of what he must be prepared to meet, and therefore, it is factually insufficient. See Russell, 369 U.S. at 764.

At the hearing on these Motions, Government's counsel asserted that it could cure Count IV's lack of factual specificity with a bill of particulars. "But it is a settled rule that a bill of particulars cannot save an invalid indictment." Id. at 769-70. A grand jury ensures that a man's "'jeopardy [is limited] to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.'" Id. at 771 (quoting Stirone v. United States, 361 U.S. 212, 218 (1960)). To allow the Government in this case to make the determination of what was in the mind of the grand jury when it indicted Defendant would permit the Government to serve the dual role of grand juror and prosecutor. This would deprive Defendant of the fundamental protections afforded by the Fifth Amendment's

Grand Jury Clause. Accordingly, a bill of particulars cannot save Count IV's deficiencies, and for these reasons, Defendant's Motion to Dismiss Count IV is granted.

**5. Motion to Dismiss Count V**

Defendant has moved to dismiss Count V on the basis that it does not assert the proper elements of a violation of 18 U.S.C. § 1512(c)(2), which makes it a crime to corruptly obstruct, influence, or imepede "an official proceeding." 18 U.S.C. § 1512(c)(2). Though Count V tracks the language of the statute and asserts that Defendant did obstruct "an official proceeding," Count V's specification of facts section alleges that Defendant committed the offense by alerting CC #1 to the identify of an FBI informant who the Defendant knew and had reason to believe was part of a "federal investigation" into CC #1's alleged criminal activity. Defendant contends that a "federal investigation" is not an official proceeding, and therefore, Count V fails to state an offense. In the alternative, Defendant has requested a bill of particulars identifying the official proceeding that he is alleged to have obstructed.

An official proceeding under § 1512(c)(2) is defined as:

> **(A)** a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> **(B)** a proceeding before the Congress;
> **(C)** a proceeding before a Federal Government agency which is authorized by law; or
> **(D)** a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the

21

> business of insurance whose activities affect interstate
> commerce.

18 U.S.C. § 1515(a)(1).  A person can be guilty of obstruction if an official proceeding is

pending or about to be instituted at the time of the obstructive act.  18 U.S.C. § 1512(f)(1).

If it is not pending at the time of the obstructive act, an official proceeding must at least be

foreseeable.  Arthur Andersen LLP v. United States, 544 U.S. 696 (2005).

Here, Count V alleges that Defendant obstructed an official proceeding, but the

allegations of the indictment state that he obstructed a federal invesitgation.  In United States

v. Dunn, 434 F. Supp. 2d 1203 (M.D. Ala. 2006), the Middle District of Alabama held that

a federal investigation is not an official proceeding under § 1512.  Id. at 1209.  In Dunn the

defendant allegedly obstructed the ATF's investigation of a missing firearm.  There were no

other federal court proceedings or grand jury investigations pending or foreseeable at the

time.  The sole issue was whether the ATF's investigation into the missing firearm was an

"official proceeding."  Id. at 1205-06.  The district court reasoned that the investigation was

not an official proceeding because the common and ordinary understanding of the term

"proceeding" connotes a hearing.  Id. at 1207.

This Court agrees with the court's reasoning in Dunn and thus finds that the federal

investigation charged in Count V is not an official proceeding for purposes of 18 U.S.C. §

1512.  The Government asserts that Count V can still be saved because in this case there

were "multiple official proceedings" pending at the time of the investigation, while in Dunn

there were none.  The Government seems to be arguing that Defendant obstructed an official

proceeding by impeding an investigation. True, Defendant's alleged obstruction of the investigation could have obstructed an official proceeding. The problem with the Government's position, however, is that the indictment does not allege the official proceeding that Defendant was indicted for obstructing. At least one Court of Appeals has held that an indictment charging a violation of 18 U.S.C. § 1512 is insufficient if it does not identify the official proceeding. See United States v. Murphy, 762 F.2d 1151 (1st Cir. 1985)

In Murphy the defendant was indicted under 18 U.S.C. § 1512(a)(1) for threatening a witness with the intent to influence the witness's testimony in an official proceeding. The indictment did not allege the specific official proceeding that was involved. Id. at 1153. On appeal, the First Circuit Court of Appeals applied the standards set out by the Supreme Court in Russell and concluded that the indictment did not sufficiently apprise the defendant of what he had to meet because it was "wholly unclear from the indictment" which official proceeding the grand jury had indicted the defendant for obstructing. Id. at 1154. In addition, the court noted that the course of the defendant's trial exemplified the dangers associated with such a vague indictment because the Government pressed two different theories of the defendant's guilt to the jury. Id. at 1154-55. During the opening statement, the Government identified a particular official proceeding as the one defendant had obstructed, while in its closing it identified a completely different official proceeding. Id. Accordingly, the court reversed the defendant's conviction and remanded with instructions to dismiss the indictment. Id. at 1155.

As in Murphy, Count V does not sufficiently apprise Defendant of the charges against

him because it is unclear from this indictment which official proceeding Defendant is charged with obstructing. Moreover, Count V's lack of specificity allows the Government to pursue a conviction against Defendant based on an official proceeding that he was not indicted for obstructing. This potential is highlighted by the Government's continued assertions that there were "multiple official proceedings" pending at the time of the alleged obstructive act.[3] The fact that they were pending is irrelevant if the grand jury did not indict Defendant for obstructing them. Thus, if the Government was allowed to go forward on this Count, it would be free to secure a conviction based on the official proceeding that it thinks Defendant obstructed, rather than on the official proceeding upon which the grand jury based its indictment. Such a practice is clearly prohibited by the Fifth Amendment, which ensures that no defendant will be tried on charges that are not set forth in the indictment. Russell, 369 U.S. at 770; Thomas v. Harrelson, 942 F.2d 1530, 1531 (11th Cir. 1991). Accordingly, Defendant's Motion to Dismiss Count V is granted.

### 6. Motion for Election or Separate Trial of Counts

Defendant requests that the Government be required to elect to proceed to trial on either Count I, Count IV, or Counts II, III, and V, or that there be a separate trial on each count or group of counts. In his Motion and at the hearing, Defendant conceded that Counts II and III are properly joined and could be properly tried together. Because Counts II and III are the only Counts that remain, Defendant's Motion is denied as moot.

---

[3]The Court has based its ruling on the face of the indictment because the deficiency is apparent on its face. The Court has simply pointed to this information to demonstrate why it is important for indictments to charge an offense with adequate specificity.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress and Motion to Dismiss Count II are denied. Defendant's Motion to Dismiss Count I, Motion to Dismiss Count IV, and Motion to Dismiss Count V are granted. Defendant's Motion for Election or Separate Trial of Counts is denied as moot. Last, as to Count II, the Government is ordered to provide to the Defendant within ten (10) days of the entry of this Order an amended bill of particulars (1) identifying how each part of Defendant's testimony had the effect of obstructing or impeding the administration of justice and (2) stating the grand jury's purpose.

**SO ORDERED**, this the  28th  day of February, 2008.


_____ /s/ Hugh Lawson  _____
_____        **HUGH LAWSON, Judge**


dhc