**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WINSTON C. PETERSON** | : | **Criminal Action No.** |
| | : | **7:07-CR-34-HL** |
| **Defendant.** | : | |
| | : | |

# ORDER

Before the Court are Defendant's Motion to Suppress Evidence Obtained by Electronic Surveillance or Wiretap (Doc. 68), Defendant's Motion for Additional Discovery and to Modify Order of Limited Disclosure of Sealed Matters (Doc. 69), Defendant's Renewed Motion to Suppress Grand Jury Testimony (Doc. 76), Defendant's Motion to Dismiss Count I (Doc. 75), Defendant's Motion in Limine in Connection with Count II (Doc. 42), Defendant's Motion to Dismiss Count III (Doc. 81), Defendant's Motion to Dismiss Count IV (Doc. 73), Defendant's Motion for Election or Separate Trial of Counts (Doc. 74), and Defendant's Motion to Unseal Search Warrant (Doc. 101). For the following reasons, Defendant's Motion to Suppress Evidence Obtained by Electronic Surveillance, Renewed Motion to Suppress Grand Jury Testimony, and Motion to Dismiss Count I are denied.

Defendant's Motion for Additional Discovery and to Modify Order of Limited Disclosure of Sealed Matters, Motion in Limine in Connection with Count II, and Motion for Election or Separate Trial of Counts are denied as moot. Last, Defendant's Motion to Dismiss Count III, Motion to Dismiss Count IV, and Motion to Unseal are granted.

## I.   BACKGROUND

Defendant Winston Peterson is the Sheriff of Clinch County, Georgia.   On November 2, 2007, the grand jury returned a five count Indictment (Doc. 1) against Defendant Peterson, charging him with extortion by a public official in violation of 18 U.S.C. § 1951 (Count I), obstruction of justice in violation of 18 U.S.C. § 1503 (Count II), perjury in violation of 18 U.S.C. § 1623 (Count III), forced labor in violation of 18 U.S.C. § 1589 (Count IV), and obstruction of justice in violation of 18 U.S.C. § 1512(c)(2) (Count V).

Count I charged that Defendant committed extortion in violation of the Hobbs Act when he charged inmates for their room and board at the Clinch County Jail. Count IV charged Defendant with using the forced labor of an inmate identified by the initials ES.   Count V charged Defendant with obstruction of justice for tipping off Co-Conspirator #1 ("CC #1") as to the identity of a confidential informant against CC #1.   Counts II and III charged Defendant with lying to the grand jury when asked whether he did in fact disclose to CC #1 the identity of a confidential informant. Defendant filed Motions to Dismiss Counts I, II, IV, and V.   He also filed a Motion to

Suppress Grand Jury Testimony and a Motion for Election or Separate Trial of Counts. On February 28, 2008, the Court entered an Order (Doc. 45) denying Defendant's Motion to Suppress and Motion to Dismiss Count II, granting Defendant's Motions to Dismiss Counts I, IV, and V, and denying as moot Defendant's Motion for Election or Separate Trial of Counts.

After the Court dismissed Counts I, IV, and V, the Government filed a four count Superseding Indictment (Doc. 59) that charges Defendant with the same offenses charged in the original Indictment, except for the Hobbs Act violation that was charged in Count I. In the Superseding Indictment, Count I corresponds to Count II of the original Indictment, Count II corresponds to the original Count III, Count III corresponds to the original Count V, and Count IV corresponds to the original Count IV.

Defendant has filed a Motion to Suppress Evidence Obtained by Electronic Surveillance or Wiretap, a Motion for Additional Discovery and to Modify Order of Limited Disclosure of Sealed Matters, a Renewed Motion to Suppress Grand Jury Testimony, a Motion to Dismiss Count One, a Motion in Limine in Connection with Count Two, a Motion to Dismiss Count Three, a Motion to Dismiss Count Four, a Motion for Election or Separate Trial of Counts, and a Motion to Unseal Search Warrant.

## II.  DISCUSSION

### A.  Motion to Suppress Evidence Obtained by Electronic Surveillance

**or Wiretap**

On April 9, 2007, the Court entered an order in Case No. 5:07-MJ-0403 authorizing the interception of telephonic and other oral communications by means of a wiretap on Judge Brooks Blitch's telephone and other surreptitiously planted recording devices in Judge Blitch's office. Prior to his recent resignation, Judge Blitch was the Chief Superior Court Judge of the Alapaha Circuit. Pursuant to this electronic surveillance order, the Government intercepted and recorded two conversations that Defendant contends the Government will introduce as evidence in Defendant's trial. Defendant seeks suppression of this evidence on two grounds: (1) the affidavit in support of the electronic surveillance application does not allege facts sufficient to establish probable cause; and (2) the application and affidavit do not show that normal investigative methods have been tried or reasonably appeared to be unlikely to succeed or were too dangerous, as required by 18 U.S.C. § 2518(3)(c). In addition, Defendant requests a <u>Franks</u> hearing to determine whether the affiant omitted material facts from the affidavit in support of the wiretap intercept order.[1]

### 1. Probable cause

To support an order of electronic surveillance, an affidavit must establish, among other things, probable cause to believe that an individual is committing, has

---

[1]Defendant raised additional arguments in his Motion to Suppress, but he explicitly abandoned them in his Reply. Thus, these are the only grounds for the Court to consider.

committed, or is about to commit certain offenses enumerated in 18 U.S.C. § 2516, and probable cause to believe that communications concerning that offense will be obtained through electronic surveillance. 18 U.S.C. § 2518(3)(a). The probable cause necessary to support a wiretap authorization is the same probable cause necessary for a search warrant. United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990). Thus, probable exists if the totality of the circumstances indicate that there is a fair probability that the sought for evidence will be obtained. Illinois v. Gates, 462 U.S. 213, 239 (1983). The probable cause determination of the judge who issued the wiretap order will be upheld if the judge had a "substantial basis" for concluding that probable cause existed. Nixon, 918 F.2d at 900.

In this case, the affidavit alleges that probable cause exists to believe that Judge Blitch and others have committed, are committing, or will continue to commit the federal offense of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951(a), which is an offense enumerated in § 2516. Defendant contends that the affidavit filed in support of the search warrant fails to show probable cause for two reasons. First, it fails to show that Judge Blitch received anything of value in return for fixing criminal cases. Second, it contains no allegation of an impact upon interstate commerce, which is an element of a Hobbs Act violation.

### a. Receipt of thing of value

"An extortion conviction under the Hobbs Act requires proof that (1) the defendant induced his victim to part consensually with property (2) either through the

5

wrongful use of actual or threatened force, violence or fear or under color of official right (3) in such a way as to adversely affect interstate commerce." United States v. Smalley, 754 F.2d 944, 947 (11th Cir. 1985). There are two types of Hobbs Act extortion: (1) extortion by force, which is the "'obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear;'" and (2) extortion under color of official right, which is the "'obtaining of property from another, with his consent, under color of official right.'" United States v. Clark, 773 F. Supp. 1533, 1534 (M.D. Ga. 1991) (quoting United States v. Williams, 621 F.2d 123, 124 (5th Cir. 1980)).[2] In order to establish extortion under color of official right, the Government does not need to show the element of actual or threatened force, violence, or fear. United States v. Glass, 709 F.2d 669, 674 (11th Cir. 1983).

Defendant contends that to establish the offense of extortion by a public official, the Government must prove that a public official participated in the solicitation of payment and that the demand for payment was coupled with the public official's promise to perform some act of official grace. Accordingly, Defendant argues that the affidavit in this case must demonstrate probable cause to believe that Judge Blitch solicited and received payment in return for the exercise of official acts.

---

[2]The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981). This body of precedent is binding unless and until overruled by the Eleventh Circuit en banc. Id.

Because the affidavit only establishes that private individuals, not Judge Blitch, demanded and received money, Defendant contends that probable cause does not exist. The Court disagrees with Defendant's interpretation of both the law and the allegations in the affidavit.

First, to establish the offense of extortion by a public official, the Government need not prove that the public official actively solicited the illicit payment. Evans v. United States, 504 U.S. 255, 268 (1992). Passive receipt of property by a public official is sufficient to form the basis of a Hobbs Act violation if the official received the property knowing that it was in return for official acts. Id. Second, a Hobbs Act violation is not contingent on the extortionist receiving the extorted property. See United States v. Haimowitz, 725 F.2d 1561, 1577 (11th Cir. 1984); United States v. Cerilli, 603 F.2d 415, 420 (3d Cir. 1979); United States v. Hyde, 448 F.2d 815, 843 (5th Cir. 1971). "[T]he gravamen of the offense is loss to the victim." Hyde, 448 F.2d at 843; see United States v. Hairston, 46 F.3d 361, 365 (4th Cir. 1995). Thus, it is a violation for a public official to perform an act in return for payment to a third-party. See Haimowitz, 725 F.2d at 1577; see generally United States v. Scacchetti, 668 F.2d 643 (2d Cir. 1982) (affirming Hobbs Act conviction where city court judge dismissed ticket in return for payment to a friend).

In this case, the affidavit contains numerous allegations that Judge Blitch

"fixed"[3] criminal cases in return for payment to his cohorts.  For example, there are allegations that criminal defendants appearing before Judge Blitch paid Ora Dee Bolden to get Judge Blitch to fix their cases.  (Aff. ¶ 31).  Though Bolden claims she never gave money directly to Judge Blitch, the affidavit contains allegations that Blitch knew Bolden received money in return for her ability to get Judge Blitch to give lenient treatment to defendants.  (Id.).  On one occasion, Bolden told Judge Blitch that Blitch had to give a defendant a light sentence because Bolden was broke and needed the money. (Id.).  On another occasion, a defendant paid Bolden $2,000 to get Blitch to fix his case.  (Id. at ¶ 48).  When Bolden went to see Judge Blitch about the case, she told Blitch that the defendant paid her.  (Id.).  Shortly thereafter, Judge Blitch dismissed a portion of the defendant's sentence.  (Id.).  Also, Rhonda Cross, Bolden's granddaughter, overheard Bolden discussing the payment of money with Judge Blitch.  (Id. at ¶ 31).  In addition to Bolden, there are numerous allegations that other associates of Blitch, including Charles Bennett, Robert Lee McEady, and Hayward Collier Jr., solicited or accepted payment in return for their ability to get Blitch to fix cases.

Under Defendant's narrow interpretation of the Hobbs Act, these allegations do not establish probable cause because a public official does not violate the Act when the official performs an official act in return for payments to a third-party.  As

---

[3]The affidavit states that the term "fixing cases" refers to mitigating the consequences of a defendant's indictment, conviction, or violation of probation or parole.

demonstrated above, the Act is not so narrow.  The Government need not prove that the public official actively solicited payment for an official act, nor must it prove that the official received the payment.  Thus, assuming for the sake of argument that the affidavit contains no allegations that Blitch ever received a penny in return for fixing cases, there are numerous allegations that Judge Blitch gave lenient treatment to defendants in return for payments to Bolden.  These allegations alone are sufficient to establish probable cause to believe that Judge Blitch committed, attempted to commit, or conspired to commit violations of the Hobbs Act.

Furthermore, there are allegations that Judge Blitch received payment for fixing cases.  Cross alleges that she once heard Bolden tell Judge Blitch that she had "the money" and would bring it to him later.  (Id. at ¶ 35).  Another witness, Gerald Williams, alleges he used Bolden to funnel over $10,000 to Judge Blitch in return for fixing cases.  (Id.).  A final witness, Cooperating Witness #2 ("CW-2"), alleges that several years ago he personally witnessed his father pay Blitch $2,500 in cash to dismiss marijuana charges against CW-2.  (Id. at ¶ 84).  Furthermore, after CW-2 shot somebody in late 2000, CW-2 alleges that he was told by Charles Bennett that CW-2 would not have to go to jail if he could come up with $20,000.  (Id. at ¶¶ 85-87).  Concerned that Bennett was trying to steal his money, CW-2 approached Blitch, and Blitch told CW-2 to "[r]emember what the man told you.  That is a fact."  (Id. at ¶ 90).  Subsequently, Bennett told CW-2 that he had talked Blitch down to $10,000.  (Id. at ¶ 91).

Because the affidavit contains allegations that Judge Blitch gave defendants lenient treatment in return for payment to his close associates and to himself, there was ample probable cause to believe that Blitch committed, was committing, or would commit violations of the Hobbs Act. Defendant's Motion to Suppress based on the lack of probable cause is denied.

### b. Interstate commerce

To establish a substantive violation of the Hobbs Act, the Government must prove that the extortion had an impact on interstate commerce. United States v. Taylor, 480 F.3d 1025, 1027 (11th Cir. 2007). The Government only needs to show that the impact was de minimis. United States v. Castleberry, 116 F.3d 1384, 1387 (11th Cir. 1997). To establish a conspiracy, or attempt, to commit a violation of the Hobbs Act, the Government only needs to prove a potential impact on interstate commerce. United States v. Carcione, 272 F.3d 1297, 1301 n.5 (11th Cir. 2001). In United States v. Bernard, 47 F.3d 1101 (11th Cir. 1995), the Eleventh Circuit held that "[a] public official's receipt of a bribe in return for nonenforcement of drug laws, through definition, impacts upon interstate commerce." Id. at 1103.

In this case, the affidavit alleges Judge Blitch and others committed, attempted to commit, and conspired to commit violations of the Hobbs Act by fixing cases, including drug cases. Defendant concedes in his Reply that his interstate commerce argument is foreclosed by the Eleventh Circuit's decision in Bernard, but he states that he raises the issue to preserve it for appellate purposes because he

believes <u>Bernard</u> was wrongly decided.  Nevertheless, <u>Bernard</u> is binding authority on this Court.  Because the affidavit alleges that Judge Blitch accepted bribes in return for fixing drug cases, the Court finds that the affidavit establishes probable cause to believe that the alleged extortionate activities had a potential impact on interstate commerce or an actual, de minimis impact.

## 2.  Normal investigative methods

An application for a wiretap order must contain "'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" <u>United States v. Van Horn</u>, 789 F.2d 1492, 1496 (11th Cir. 1986) (quoting 18 U.S.C. § 2518(1)(c)).  The requirement that law enforcement show necessity prevents the routine use of electronic surveillance and limits its use to instances in which less intrusive techniques will not succeed.  <u>Id.</u>  "The affidavit need not, however, show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves."  <u>Id.</u>

In this case, the affidavit contains fourteen paragraphs and five pages of detailed allegations about the necessity of electronic surveillance. (Aff. ¶¶ 129-142).  In this discussion, the affidavit describes several alternative techniques that had been considered, tried, or failed: confidential sources and cooperating witnesses, physical surveillance, grand jury subpoenas, interviews of subjects or associates,

search warrants, undercover agents, consensual monitoring, pen registers and toll analysis, and trash covers.

The affidavit explains that the FBI had been using confidential informants and cooperating witnesses for over two years, but these sources had been unable to provide any information that would result in a successful prosecution. Physical surveillance efforts had been utilized, but such efforts were unsuccessful because physical surveillance only confirms meetings among individuals; it does not identify the purpose or nature of the meetings. In addition, prolonged physical surveillance would likely be noticed in a rural community such as Clinch County, which could compromise the investigation by alerting targets that they are under investigation and potentially create a risk to the safety of confidential sources and undercover agents. Grand jury subpoenas would not be helpful because, based on the affiant's experience, individuals would be reluctant to testify for fear of retaliation. For example, Bolden has repeatedly stated that she fears for her life. Also, interviewing subjects would only alert them about the investigation and potentially result in the destruction or concealment of evidence. In addition, witnesses are unlikely to cooperate with the investigation because individuals who have had their cases fixed in the past would not want to foreclose the possibility that they could receive such preferential treatment in the future, those with pending cases would not want to risk receiving harsh treatment, and residents of the Alapaha Circuit are generally immobile, and therefore, they would likely not want to cooperate against allies in a

small community.  Search warrants had been executed in the past but did not yield helpful information.  Undercover agents would likely not be able to penetrate the organization.  Consensual monitoring had been used, but it did not produce evidence that could lead to a successful prosecution.  Pen registers and toll analysis could be used, but they could only be used to establish that certain individuals are contacting each other, not the contents of their covnersation.  Last, collecting trash from the subjects would not produce helpful evidence because officials involved in public corruption rarely make a written record of their agreements or discussions about corrupt activities.

These allegations demonstrate that several alternative investigative techniques were tried but failed.  They also demonstrate that other investigative techniques would not be successful.  As a result, the Court finds that the affidavit adequately establishes the necessity for electronic surveillance.  Defendant's Motion to Suppress on this ground is denied.

### 3.  <u>Franks</u> Hearing

In his Motion to Suppress, Defendant requested a <u>Franks</u> hearing to determine whether the affiant omitted material facts from the affidavit.  In his Reply, Defendant again raised this argument, but at the motions hearing, Defendant contended that he was not requesting a <u>Franks</u> hearing at this time.  Because Defendant abandoned this argument, the Court need not address it.  Nevertheless, the Court notes that a defendant is entitled to a <u>Franks</u> hearing only where the defendant makes a

substantial preliminary showing that (1) the affidavit contains a material misstatement or omission of fact, and (2) the misstatement or omission was essential to the finding of probable cause. United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006). In this case, Defendant has not made any showing, much less a substantial one, that the affidavit contains a material misstatement or omission of fact. As a result, he is not entitled to a Franks hearing.

**B.    Motion for Additional Discovery and to Modify Order of Limited Disclosure of Sealed Matters**

Defendant requests that the Court modify its Order of Limited Disclosure of Sealed Matters in 5:07-MJ-0403. Specifically, Defendant requests that the Order be modified to require disclosure of the Government's periodic reports to the Court, any written instructions provided to the agents charged with monitoring phone calls to and from the tapped phones, and any monitoring logs reflecting calls to and from the target phone numbers. Defendant further requests that he be allowed to confront witnesses identified in the wiretap application affidavit with the statements attributed to them by the Government. In response, the Government provided to Defendant all the information he requested, and at the motions hearing, the Government agreed that Defendant should be allowed to confront the witnesses with their statements. As a result, Defendant's Motion for Additional Discovery and to Modify Order of Limited Disclosure of Sealed Matters is denied as moot.

**C.    Renewed Motion to Suppress Grand Jury Testimony**

In the Court's February 28th Order, the Court denied Defendant's first Motion to Suppress Grand Jury Testimony. In the Renewed Motion to Suppress, Defendant essentially repeats the same arguments that the Court rejected in the previous Order, but Defendant does raise one new argument. Defendant contends that after the Court denied his previous Motion to Suppress, the Government produced an audio-recording of Defendant's grand jury testimony that contains a conversation between the prosecutors and grand jurors. Defendant asserts that this conversation demonstrates that Defendant was a target of the grand jury's investigation at the time he testified, and the Government's failure to warn him of his target status requires that his testimony be suppressed. This argument does not change the Court's conclusion that Defendant's testimony should not be suppressed. First, the conversation does not demonstrate that Defendant was a target when he testified. Second, even if Defendant was a target, he still had an obligation to tell the truth, and the Government specifically informed him before he testified that he could be prosecuted for perjury if he did not tell the truth. Defendant's Renewed Motion to Suppress Grand Jury Testimony is denied.

## D.     Motion to Dismiss Count I

Count I charges that Defendant committed the offense of obstruction of justice in violation of 18 U.S.C. § 1503. Defendant seeks dismissal of Count I on the grounds that (1) it is impermissibly vague because it fails to identify the purpose of the grand jury's investigation, (2) it fails to identify which testimony or portions of

Defendant's testimony are alleged to be false, and (3) it fails to state how Defendant's testimony had the effect of obstructing or impeding justice. In the alternative, Defendant requests a bill of particulars that states (1) the purpose of the grand jury's investigation, including the identify of the elected officials and others who were under investigation, which federal laws were alleged to have been violated, and the time period covered by the investigation, (2) which testimony or portions of Defendant's testimony are alleged to be false, and (3) how Defendant's testimony had the effect of obstructing or impeding justice. After the Court held a hearing on these motions, the Government filed a Supplemental Response to Defendant's Motion to Dismiss Count I (Doc. 106), which includes a detailed Bill of Particulars for Count I. Subsequently, Defendant filed a Reply (Doc. 107), contending that the Government's Bill of Particulars for Count I does not provide all the information he has requested.

An indictment is sufficient if (1) it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of the charge he must defendant against, and (2) it permits the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. Hamling v. United States, 418 U.S. 87, 117 (1974). An indictment generally will be held sufficient if it charges in the language of the statute. United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004).

In this case, Count I adequately charges a violation of § 1503. It tracks the

language of the statute and charges all the elements.  It also sufficiently apprises Defendant of the charge he must Defendant against because it quotes the exact testimony the Government contends had the natural and probable effect of obstructing justice.  As a result, Defendant's Motion to Dismiss Count I is denied.

Having determined that Count I should not be dismissed, the Court will consider Defendant's request for a bill of particulars.  "The purpose of a bill of particulars is threefold: 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of later prosecution for the same offense."  United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)).

In this case, the Superseding Indictment alleges the purpose of the grand jury's investigation, but Defendant argues that the Government should provide more detailed information about the grand jury's purpose.  The Court disagrees.  The Superseding Indictment and the Government's Bill of Particulars for Count I provide Defendant with sufficient notice of the grand jury's purpose.  Also, the Bill of Particulars for Count I states how Defendant's statement had the natural and probable effect of obstructing justice.  Last, Defendant requests that the Government identify which portions of the testimony it alleges to be false or misleading.  As noted above, Count I quotes the exact testimony the Government alleges had the natural and probable effect of obstructing justice.  Whether the testimony is classified as

17

either false or evasive is largely irrelevant; in either event the Defendant must be prepared to defend against the Government's contention that the testimony had the natural and probable effect of obstructing justice. <u>See</u> <u>United States v. Griffin</u>, 589 F.2d 200, 204 (5th Cir. 1979). In other words, Defendant knows what testimony is alleged to be false or evasive, and he is fully aware that one of the ways he can defend against the charge is by introducing evidence and arguing to the jury that the alleged obstructive testimony was truthful and not misleading. There is no danger of unfair surprise, and this information is not necessary to Defendant's trial preparation. Thus, Defendant's request for a bill of particulars is denied.

### E.    Motion in Limine in Connection with Count II

This Motion was filed before the Government superseded the Indictment. As noted above, Count II is now Count I of the Superseding Indictment. All of the arguments Defendant made in this Motion were incorporated into his Motion to Dismiss Count I, and the Court has already ruled on the Motion to Dismiss Count I. As a result, Defendant's Motion in Limine in Connection with Count II is denied as moot.

### F.    Motion to Dismiss Count III

Count III charges that Defendant obstructed an official proceeding in violation of 18 U.S.C. § 1512(c)(2) by disclosing to CC #1 the identify of a confidential informant. This offense was charged in Count V of the original Indictment, but the Court dismissed it because it did not identify the official proceeding that Defendant

allegedly obstructed. Count III now charges that the official proceeding was the Court's ongoing supervision of an electronic wiretap order in case 5:07-MJ-0403. Defendant argues that Count III should be dismissed because a wiretap order is not an official proceeding.

Under 18 U.S.C. § 1512(c)(2), it is a crime to corruptly obstruct, influence, or impede any official proceeding. 18 U.S.C. § 1512(c)(2). An "official proceeding" is defined as:

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) a proceeding before the Congress;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1). A federal law enforcement agency investigation is not an official proceeding. <u>United States v. Dunn</u>, 434 F. Supp. 2d 1203 (M.D. Ala. 2006);

see also United States v. Ramos, 2008 WL 2875791 (5th Cir. July 28, 2008) (slip op.).  No court has resolved the issue of whether a court's ongoing supervision of a wiretap order is an official proceeding under § 1512, but at least one court has held that a wiretap investigation is not a "judicial proceeding" under 18 U.S.C. § 1503. United States v. Davis, 183 F.3d 231, 239-40 (3d Cir. 1999).

In Davis the defendant was convicted of violating 18 U.S.C. § 1503, which prohibits obstructing the "administration of justice." Id. at 239.  An element of a § 1503 offense is the pendency of some judicial proceeding constituting the administration of justice.  Id.  The judicial proceeding that the defendant was convicted of obstructing was a wiretap investigation.  Id.  On appeal, the defendant argued that his conviction should be reversed because a wiretap investigation is not a judicial proceeding.  Id.  In response, the Government conceded that an investigation, by itself, is not a judicial proceeding, but a wiretap investigation does constitute an official proceeding when it is actively monitored by a federal district court. Id. at 239-40.  The Third Circuit rejected the Government's position, reasoning that:

> [f]undamentally, a wiretap order is an investigative method used by the executive branch, not an element of the judicial process.  Judicial supervision pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968 does not make wiretaps a function of the judicial branch, but rather ensures that wiretaps-searches-are carried out within

20

the confines of the Fourth Amendment.

Id. at 240 (citations omitted).

Though the Third Circuit was interpreting the definition of "judicial proceeding" under a different statute, its reasoning applies equally to the meaning of "official proceeding" under § 1512(c)(2). Similar to § 1503, a federal investigation does not constitute an official proceeding under § 1512(c)(2), Dunn, 434 F. Supp. 2d at 1209; Ramos, 2008 WL 2875791 at *18-*19, and in Davis the court held that a wiretap is simply an investigative tool used by agents of the executive branch. Davis, 183 F.3d at 240. In reaching its holding, the Third Circuit rejected the very same arguments the Government makes in this case in an attempt to convert the wiretap investigation into an official proceeding. Id. While Davis is not binding authority on this Court, the Court agrees with its reasoning. As a result, the Court holds that a wiretap investigation is not an official proceeding under § 1512(c)(2).[4]

## G.    Motion to Dismiss Count IV

Count IV charges that Defendant committed the offense of forced labor in violation of 18 U.S.C. § 1589(3) by abusing the legal process to obtain the labor of an inmate on a privately owned blueberry farm. This is the same offense that was

---

[4]In its Response, the Government asserts that other official proceedings not charged in the indictment may have been obstructed. But Defendant was not indicted for obstructing those proceedings. As the Court explicitly stated in its previous Order, an indictment charging a violation of 18 U.S.C. § 1512 must identify the official proceeding that was obstructed. United States v. Peterson, 544 F. Supp. 2d 1363, 1376-77 (citing United States v. Murphy, 762 F.2d 1151 (1st Cir. 1985)).

charged in Count IV of the original Indictment, but the Court dismissed that Count because it did not allege how Defendant abused the legal process. After dismissal, the Government reindicted Defendant for the forced labor violation. Now, Count IV alleges that Defendant abused the legal process by giving inmate ES the "choice" to work on a privately owned blueberry farm. Implicit in this charge is that Defendant lacked the authority to present ES with this option. In other words, if ES had worked pursuant to a lawful work-release program, Defendant would not have violated § 1589. But because Defendant did not have the authority to release inmate ES to work at a private business, Defendant abused the legal process. In its Motion to Dismiss, Defendant contends that this allegation is insufficient to establish a violation of § 1589(3). Defendant contends the abuse or threatened abuse of the legal process must coerce the laborer to work against his will. Because there is no allegation that ES was coerced, he contends that Count IV fails to state a prosecutable offense. To resolve this issue, the Court must determine the meaning of the terms used in § 1589(3).

To determine the meaning of a statute, courts should always begin with the language of the statute itself. Huff v. DeKalb County, 516 F.3d 1273, 1280 (11th Cir. 2008. It is well-settled that, in the absence of a statutory definition, the words used in a statute are generally given their ordinary meaning. Id.; In re Griffith, 206 F.3d 1389, 1393 (11th Cir. 2000). But "statutory language cannot be construed in a vacuum." See Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809 (1989).

"Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. U.S. Postal Service, 546 U.S. 481, 486 (2006); see F.T.C. v. Univ. Health Inc., 938 F.2d 1206, 1216 (11th Cir. 1991).

Under § 1589(3), it is unlawful to provide or obtain the labor or services of another person "by means of the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 158(3). Because these terms are not defined in the statute, they must be given their ordinary meaning. The word "abuse" means, "1. To depart from legal or reasonable use in dealing with (a person or thing); to misuse. 2. To injure (a person) physically or mentally. 3. To damage (a thing)." BLACK'S LAW DICTIONARY 10 (7th ed. 1999). Based on the common and ordinary meaning of abuse and the absence of an express coercion requirement, subsection (3) seems to prohibit any individual from misusing the law or legal process to obtain or provide the labor of another individual, regardless of whether such misuse has a coercive effect on the laborer. Nevertheless, a close reading of subsection (3), and an analysis of the overall statutory scheme demonstrates that coercion is a requirement.

Section 1589 contains three subsections. The first prohibits obtaining or providing labor "by threats of serious harm to, or physical restraint against, that person or another person." 18 U.S.C. § 1589(1). The second prohibits obtaining or providing labor "by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that

23

person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(2). The conduct prohibited in these two subsections, by definition, constitutes coercion. <u>See</u> BLACK'S LAW DICTIONARY 252 (defining "coercion" as "compulsion by physical force or threat of physical force"). As a result, the logical conclusion is that § 1589 is a statute designed to prohibit obtaining another's labor through coercive conduct. Interpreting subsection (3) not to contain a coercion requirement would be inconsistent with this interpretation. In other words, subsection (3) only fits into the overall statutory scheme if it prohibits misusing the legal process to coerce, or pressure, somebody into providing labor. It would make no sense, in the context of the statute, for subsection (3) to prohibit obtaining consensual labor through a misuse of the legal process.

Indeed, the language of subsection (3) evinces an intent to prohibit only misuses of the legal process that are coercive. This subsection prohibits both actual and threatened abuses of the legal process. The definition of a threat is, "1. A communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent.... 2. An indication of an approaching menace.... 3. A person or thing that might well cause harm." BLACK'S LAW DICTIONARY 1489-90. Based on this definition, the word "threatened" limits the meaning of the word "abuse" to misuses of law or the legal process that are harmful to the person receiving the threat. For example, it would be absurd to say that the statute prohibits someone from threatening to misuse the

legal process for the laborer's benefit. Furthermore, the word abuse must be given the same meaning throughout the statute because identical words used in the same statute are presumably intended to have the same meaning. See United States v. Perez, 443 F.3d 772, 781 (11th Cir. 2006). As a result, the language of subsection (3) is consistent with the language used in the other subsections as it prohibits using harmful measures to induce another to provide labor. By definition, this prohibited conduct constitutes coercion.

The context in which the statute was enacted confirms this interpretation. Section 1589 was enacted as part of the Trafficking Victims Protection Act of 2000 ("TVPA"). Pub. L. No. 106-386, 114 Stat. 1464 (2000). The TVPA was enacted, in part, in response to the Supreme Court's decision in United States v. Kozminski, 487 U.S. 931 (1988). See § 102, 114 Stat. 1464, 1467; United States v. Bradley, 390 F.3d 145, 150 (1st Cir. 2004), vacated on other grounds, 545 U.S. 1101. In Kozminski the Supreme Court narrowly interpreted the involuntary servitude statute, 18 U.S.C. § 1584, holding that the statute only prohibits compulsion of services through either physical or legal coercion. 487 U.S. at 952. The Supreme Court expressly rejected an interpretation of the involuntary servitude statute that would have also prohibited obtaining labor through psychological coercion. Id. at 944, 949-50. To counter Kozminski's limited definition of coercion, Congress included a broader definition of coercion in the TVPA, defining coercion as:

(A) threats of serious harm to or physical restraint against any person;

(B) any scheme, plan, or pattern intended to cause a person to believe

that failure to perform an act would result in serious harm to or physical

restraint against any person; or

(C) the abuse or threatened abuse of the legal process.

§ 103(2), 114 Stat. 1464, 1469, codified at 22 U.S.C. § 7102(2). This three-pronged

definition of coercion corresponds directly to § 1589's three subsections. Though

Congress did not use the term coercion in the forced labor statute, it did use the

TVPA's definition of coercion to identify the prohibited means of obtaining another's

labor. This provides further evidence that Congress enacted the forced labor statute

to prohibit obtaining another's labor through coercive means.

Last, § 1589's title is "Forced Labor," and it is located within Chapter 77, which

is titled, "Peonage, Slavery, and Trafficking in Persons." The definition of "forced

labor" is "[w]ork exacted from a person under threat of penalty; work for which a

person has not offered himself or herself voluntarily." While this Court is fully aware

that titles of a statute do not have the force of law, they can be helpful interpretive

tools, especially in a case such as this where the title is fully consistent with the

internal structure of the statute, the statute's terms, and the TVPA.

Turning to the facts of this case, Count IV does not allege that Defendant

abused the legal process to force Defendant into labor; it specifically alleges that

Defendant gave ES the choice to work on the blueberry farm. The basis for the

forced labor charge is simply that it is a misuse of the legal process for Georgia

26

sheriffs to allow inmates to work at a private business.  As demonstrated above, this alleged misuse of the legal process is not enough to allege a violation of § 1589(3). To adequately allege a violation of this statute, the Government must allege that Defendant misused the legal process to coerce another into providing labor.  Count IV contains no such allegation,[5] and therefore, it is dismissed.

## H.     Motion for Election or Separate Trial of Counts

In his Motion for Election or Separate Trial of Counts, Defendant requests that Count IV be tried separately from Counts I through !II.  Because the Court dismissed Count IV, this Motion is denied as moot.

## I.     Motion to Unseal Search Warrant

Defendant requests an order unsealing the warrant authorizing the search of the Clinch County Sheriff's Office, the warrant application, and the warrant affidavit, which where all filed under seal in Case No. 7:07-MJ-1.  The Government contends that these items should not be unsealed because the search warrant was never executed.  According to the Government, Defendant knowingly and voluntarily consented to a search of the Sheriff's Office before F.B.I. agents executed the warrant.

In support of his Motion to Unseal, Defendant relies, in part, on the common law right of access to inspect and copy judicial records.  As the Supreme Court

---

[5]At the motions hearing, the Government conceded that Count IV alleges simply that Defendant abused the legal process by allowing an inmate to work at a private business.

noted in <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589, 597 (1978), there exists in this country "a general right to inspect and copy public records and documents, including judicial records and documents." <u>Id.</u> This common law right establishes a presumption in favor of access, but the right is not absolute. <u>See</u> <u>United States v. Rosenthal</u>, 763 F.2d 1291, 1294 (11th Cir. 1985). The decision whether to grant access to judicial documents is a matter vested in the sound discretion of the trial court. <u>Id.</u> at 1295. In exercising this discretion, the trial court must consider various factors, including "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." <u>Newman v. Graddick</u>, 696 F.2d 796, 803 (11th Cir. 1983) (citing <u>Nixon</u>, 435 U.S. at 599).

Here, the search warrant and affidavit that Defendant seeks to unseal are judicial records. <u>See</u> <u>Baltimore Sun Co. v. Goetz</u>, 886 F.2d 60, 63 (4th Cir. 1989). But unlike the cases relied on by Defendant, members of press are not seeking access. Defendant is seeking access to a search warrant that authorized the search of his office and the building in which it is located. Nevertheless, the cases relied on by Defendant are instructive in that they make it abundantly clear that judicial documents should not be sealed indefinitely; they should only remained sealed when some interest would be adversely affected if the documents were made public. At

the motions hearing, the Government failed to articulate any interest that would be adversely affected by unsealing the search warrant and affidavit. For example, unsealing the documents would not impede an ongoing investigation. Government agents have already searched the areas mentioned in the search warrant, and Defendant is already under indictment, as are other targets of the investigation. Because the Government has failed to articulate a sufficient reason to keep the warrant and affidavit under seal, Defendant's Motion to Unseal is granted.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Evidence Obtained by Electronic Surveillance, Renewed Motion to Suppress Grand Jury Testimony,  and Motion to Dismiss Count I are denied.  Defendant's Motion for Additional Discovery and to Modify Order of Limited Disclosure of Sealed Matters, Motion in Limine in Connection with Count II, and Motion for Election or Separate Trial of Counts are denied as moot.  Last, Defendant's Motion to Dismiss Count III, Motion to Dismiss Count IV, and Motion to Unseal are granted.

**SO ORDERED**, this the 22nd day of August, 2008

*s/   Hugh Lawson*
**HUGH LAWSON, Judge**

dhc